WEIR & PARTNERS LLP
By:    Georgios Farmakis, Esq. (319119)
215 Fries Mill Road, 2nd Floor
Turnersville, New Jersey 08012
(856) 662-1018
(856) 662-1592 fax
gfarmakis@weirpartners.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABOURAS, TAMER; BARR, CHRISTOPHER; CELMAYSTER, CLARK; CELMAYSTER, MARGARET; COLLINS, ANNEMARIE F.; DAVIS, CANDACE; DEIS, MICHELLE; DROTAR, CHERYL; FREIBERG, MICHELE; HATFIELD, MEGAN; HUDAK, JEANNE; JONES, MICHAEL; KERR, MICHAEL; KRUM, EMILY; LAIRD, RACHEL; LASORDA, DANIELLE; LAULETTA, STEPHANIE; LOPEZ, NOEL; MANSMITH, SAMANTHA; MEIERS, LAWRENCE; MILLHOUSE, JOSHUA; NEELY, TOM; PATTON, DIANA; PETROPOULOS, AMALIA; REINHOLD, ASHLEY; ROMANO, SUE BORJESON; SABO, MICHAEL; SIMS, ANDREW; STEIN, KRISTIN; STOCK, NANCY; WEAVER, STEPHANIE; WEHRS, RANDY; WHARTON, CHRISTOPHER, WHITMAN, HOWARD, | Civil Action No. |
| | |
| | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| **Plaintiffs** | |
| v. | |

ANN E. KIELINSKI; WALTER M.                 :
KIELINSKI; MERION MATTERS;                 :
MERION MATTERS, INC.;                       :
MERION MATTERS GROUP, INC.;                :
MERION PUBLICATIONS, INC.;                  :
ADVANCE HEALTHCARE SHOP, INC.              :
ADVANCE ONLINE MERCHANDISE,                :
INC.; JOHN DOES 1-20; JOHN DOE             :
CORPORATIONS 1-20.                          :
                            **Defendants**  :

---

## COMPLAINT

Plaintiffs, by their undersigned attorneys, file this Complaint against Defendants for certain unlawful actions taken with regard to the terms and conditions of Plaintiffs' employment, including failure to pay wages and unlawful retainer of various payroll deductions.

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over Plaintiffs' claims under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. and the Worker Adjustment and Retraining Notification Act, 29 U.S.C.A. § 2101, et seq..

2.  Venue is proper in this district pursuant to 28 U.S.C. §1391, in that a substantial part of the events giving rise to this action occurred in this district.

3.  This Court has personal jurisdiction over Defendants based upon their sufficient minimum contacts with Pennsylvania and that they have purposefully availed themselves to the benefits and protections of Pennsylvania laws. Plaintiffs' claims and requests for relief are directly related to Defendants' contacts with Pennsylvania. Further, Defendants have engaged in continuous and systematic activities within Pennsylvania. Accordingly, this Court's exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice.

Venue is proper in this Court under 28 U.S.C. §1391(b)(2), and because it is Globus's choice of forum, and Globus's principal place of business is in this District.

## NATURE OF THE ACTION

4.    Plaintiffs bring this Complaint against Defendants alleging that they committed unlawful actions with regard to the terms and conditions of their employment. Specifically, Plaintiffs contend that Defendants failed to pay their employee wages and retained various payroll disbursements for their own behalf.

## PARTIES

5.    Plaintiff Tamer Abouras is an adult individual residing at 109 Holly Parkway, Williamstown, New Jersey 08094, and at all times relevant hereto, was an employee of Defendants.

6.    Plaintiff Christopher Barr is an adult individual residing at 215 Rock Street, Apt. G7, Philadelphia, Pennsylvania 19128, and at all times relevant hereto, was an employee of Defendants.

7.    Plaintiff Clark Celmayster is an adult individual residing at 1120 Shadow Oak Drive, Malvern, Pennsylvania 19355, and at all times relevant hereto, was an employee of Defendants.

8.    Plaintiff Margaret Celmayster is an adult individual residing at 1120 Shadow Oak Drive, Malvern, Pennsylvania 19355, and at all times relevant hereto, was an employee of Defendants.

9.    Plaintiff Annemarie F. Collins is an adult individual residing at 40 Old Covered Bridge Road, Newton Square, Pennsylvania 19073, and at all times relevant hereto, was an employee of Defendants.

10. Plaintiff Candace Davis is an adult individual residing at 36 NE 13 Court, Cape Coral, Florida 33909, and at time relevant hereto, was an employee of Defendants.

11. Plaintiff Michelle Deis is an adult individual residing at 151 Trent Road, Wynnewood, Pennsylvania 19096, and at all times relevant hereto, was an employee of Defendants.

12. Plaintiff Cheryl A. Drotar is an adult individual residing at 422 W. Fornance St., Norristown, Pennsylvania 19401, and at all times relevant hereto, was an employee of Defendants.

13. Plaintiff Michele Freiberg is an adult individual residing at 1600 Hagys Ford Road APT 8B, Narberth, Pennsylvania 19072, and at all times relevant hereto, was an employee of Defendants.

14. Plaintiff Megan Hatfield is an adult individual residing at 112 Flannery Drive, Norristown, Pennsylvania 19403, and at all times relevant hereto, was an employee of Defendants.

15. Plaintiff Jeanne Hudak is an adult individual residing at 3901 Kline Avenue, Reading, Pennsylvania 19606, and at all times relevant hereto, was an employee of Defendants.

16. Plaintiff Michael Jones is an adult individual residing at 126 Green Lane, Apt. 2, Philadelphia Pennsylvania 19127, and at all times relevant hereto, was an employee of Defendants.

17. Plaintiff Michael Kerr is an adult individual residing at 933 Spruce Street, Pottstown, Pennsylvania 19464, and at all times relevant hereto, was an employee of Defendants.

18. Plaintiff Emily Krum is an adult individual residing at 4004 Fox Pointe Court, Glen Mills, PA 19342, and at all times relevant hereto, was an employee of Defendants.

19. Plaintiff Rachel Laird is an adult individual residing at 2869 1st Street, Trooper Pennsylvania 10403, and at all times relevant hereto, was an employee of Defendants.

20.     Plaintiff Danielle Lasorda is an adult individual residing at 1560 Lafayette Way, Blue Bell, Pennsylvania 19422, and at all times relevant hereto, was an employee of Defendants.

21.     Plaintiff Stephanie Lauletta is an adult individual residing at 333 Norwood Road, Downingtown, Pennsylvania 19355, and at all times relevant hereto, was an employee of Defendants.

21.     Plaintiff Noel Lopez is an adult individual residing at 73 Pebble Beach Lane, Sanatoga, Pennsylvania 19464, and at all times relevant hereto, was an employee of Defendants.

22.     Plaintiff Samantha Mansmith is an adult individual residing at 1650 Heebner Way, Lansdale, Pennsylvania 19446, and at all times relevant hereto, was an employee of Defendants.

23.     Plaintiff Lawrence P. Meiers is an adult individual residing at 13239 Heather Ridge Loop, Fort Myers, Florida 33966, and at all times relevant hereto, was an employee of Defendants.

24.     Plaintiff Joshua Millhouse is an adult individual residing at 4030 Market Street, Apt 1, Philadelphia, Pennsylvania 19104, and at all times relevant hereto, was an employee of Defendants.

25.     Plaintiff Tom Neely is an adult individual residing at 623 Newcomen Road, Exton, Pennsylvania 19341, and at all times relevant hereto, was an employee of Defendants.

26.     Plaintiff Diana Patton is an adult individual residing at 1308 Hilltown Pike, Hilltown, Pennsylvania 18974, and at all times relevant hereto, was an employee of Defendants.

27.     Plaintiff Amalia Petropoulos is an adult individual residing at 707 Forest Driver, Coatesville, Pennsylvania 19320, and at all times relevant hereto, was an employee of Defendants.

28.     Plaintiff Ashley Reinhold is an adult individual residing at 3877 Manor St., Philadelphia, Pennsylvania 19128, and at all times relevant hereto, was an employee of Defendants.

29. Plaintiff Sue Borjeson-Romano is an adult individual residing at 163 Knoll Drive, Collegeville, Pennsylvania 19426, and at all times relevant hereto, was an employee of Defendants.

30. Plaintiff Michael Sabo is an adult individual residing at 416 N. Main Street, Souderton, Pennsylvania 18964, and at all times relevant hereto, was an employee of Defendants.

31. Plaintiff Andrew Sims is an adult individual residing at 170 Shea Lane, Glenmoore, Pennsylvania 19343, and at all times relevant hereto, was an employee of Defendants.

32. Plaintiff Kristin Stein is an adult individual residing at 254 Summit House, West Chester, Pennsylvania 19392, and at all times relevant hereto, was an employee of Defendants.

33. Plaintiff Nancy Stock is an adult individual residing at 925 Agnes Avenue, Morton, Pennsylvania 19070, and at all times relevant hereto, was an employee of Defendants.

34. Plaintiff Stephanie Weaver is an adult individual residing at 1720 South 4th Street, Apt 2, Philadelphia, Pennsylvania 19148, and at all times relevant hereto, was an employee of Defendants.

35. Plaintiff Randy L. Wehrs is an adult individual residing at 120 Madison Road, Willow grove, Pennsylvania 19090, and at all times relevant hereto, was an employee of Defendants.

36. Plaintiff Christopher Wharton is an adult individual residing at 306 South Swarthmore Avenue, Ridley Park, Pennsylvania 19078, and at all times relevant hereto, was an employee of Defendants.

37. Plaintiff Howard Whitman is an adult individual residing at 777 North Wales Road, North Wales, Pennsylvania 19454, and at all times relevant hereto, was an employee of Defendants.

38. Defendants Ann E. Kielinksi and Walter M. Kielinski, are husband and wife who are the owners of the Merion Matters/Advance Healthcare business and maintain a business address at 660 American Avenue, 3rd Floor, King of Prussia, Pennsylvania 19406.

39. Defendant Merion Matters is a business that has an address at 660 American Avenue, 3rd Floor, King of Prussia, Pennsylvania 19406.

40. Defendant Merion Matters, Inc. is a Pennsylvania corporation with a place of business at 660 American Avenue, 3rd Floor, King of Prussia, Pennsylvania 19406.

41. Defendant Merion Matters Group, Inc. is a Pennsylvania corporation with a place of business at 660 American Avenue, 3rd Floor, King of Prussia, Pennsylvania 19406.

42. Defendant Merion Publications, Inc. is a Pennsylvania corporation with a place of business at 660 American Avenue, 3rd Floor, King of Prussia, Pennsylvania 19406.

43. Defendant Advance Healthcare Shop, Inc. is a Pennsylvania corporation with a place of business at 660 American Avenue, 3rd Floor, King of Prussia, Pennsylvania 19406

44. Defendant Advance Online Merchandise, Inc. is a Pennsylvania corporation with a place of business 660 American Avenue, 3rd Floor, King of Prussia, Pennsylvania 19406.

45. John Does 1 through 20 are the unknown individuals who have engaged in unlawful conduct relating to Plaintiffs' employment with Defendants.

46. John Doe Corporations 1 through 20 are unknown limited liability companies, corporations, limited partnerships, trust entities, and/or related unknown entities that engaged in a unlawful activity relating to Plaintiffs' employment with Defendants.

## FACTS RELATING TO DEFENDANTS COMMON BUSINESS PRACTICES

47.    Defendants Ann E. Kielinski and Walter M. Kielinski, are husband and wife who owned and operated the Merion Matters/Advance Healthcare Shop business.

48.    Defendants Ann E. Kielinksi and Walter M. Kielinski started the Merion Matters/Advance Healthcare Shop business approximately 30 years ago.

49.    The Merion Matters/Advance Healthcare Shop business was a family owned media, marketing and merchandising company that had success since its inception as a healthcare magazine publisher in 1985.

50.    The Merion Matters/Advance Healthcare Shop business published newsmagazines to healthcare professionals nationwide.

51.    The Merion Matters/Advance Healthcare Shop business was a producer of multimedia resources, a provider of education, a host of career events, an online store and an on-site hospital show event.

52.    Millions of nursing and other health professionals utilized the Merion Matters/Advance Healthcare Shop business.

53.    Upon information and belief, the Merion Matters/Advance Healthcare Shop business contracted in size to about 100 employees throughout the past few years.

54.    Under the regular terms and conditions of their employment, Defendants were required to pay their employees on a bi-weekly basis.

55.    However, since August 2016, Defendants consistently have failed to pay their employees' bi-weekly checks in a timely fashion. Over the course of this time period, Defendants

have repeated lied to Plaintiff and other employees about the status of their paychecks and have not provided proper notice of such lateness.

56.     Upon information and belief, in March 2016, Defendants also began engaging in unlawful and illegal activity relating to the employee sponsored healthcare, which called for participation through payroll deduction.

57.     Specifically, Defendants stopped paying the health insurance company the premiums that were being deducted from the employee paychecks.

58.     As a result, employee health insurance coverage lapsed in September 2016. Defendants never provided Plaintiffs with proper notice of such lapse in their health insurance coverage.

59.     Defendants further failed to provide proper notice to Plaintiffs regarding their failure to pay the health insurance company despite Defendants' continued conduct of taking these deductions out of their employee wages.

60.     Such pattern of illegal and unlawful activity by Defendants caused Plaintiffs to question their 401k plan and other payroll deductions.

61.     Further, in August 2016, Defendants began to systematically accrue the payroll deductions of participating 401k employees, but had failed to turn these monies over to the investment firm managing the plan.

62.     When Plaintiffs questioned the shortfall in their respective accounts, Defendants excuse was this was caused by insufficient cash flow due to the poor performance of the company's sales teams. Defendants claimed that such cash flow problems made the transfer of these 401k funds impossible.

63. Upon information and belief, similar illegal and unlawful conduct was taken by Defendants towards employee disability insurance, life insurance and other employee deductions.

64. Since August 2016, Plaintiffs have questioned the ownership, management and human resource department regarding the unlawful and illegal conduct that was being taken with regard to their wages and payroll deductions.

65. In response, over the past several months, Defendants have engaged in a pattern and culture of lies and misrepresentations about the status of such issues relating to employee wages and payroll deductions.

66. Plaintiffs have not been fully reimbursed or paid for such monies relating to the unlawful and illegal action taken towards their employment by Defendants.

## FACTS PERTAINING TO INDIVIDUAL PLAINTIFFS

### Plaintiff Tamer Abouras

67. Plaintiff Tamer Abouras was employed with Defendants from October 5, 2015 until February 14, 2017, and held a position as an Assistant Editor.

68. Since August 2016, Defendants failed to provide Plaintiff Abouras with a single biweekly check in a timely fashion.

69. Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Abouras approximately $2,236.00 in wages and other forms of payroll compensation.

### Plaintiff Christopher Barr

70. Plaintiff Barr was employed with Defendants from February 1, 2016 to February 3, 2017.

71. Since August 2016, Defendants failed to provide Plaintiff Barr with a single biweekly check in a timely fashion.

72.     Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Barr approximately $2,000 in wages and other forms of payroll compensation.

73.     Plaintiff Barr also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

74.     During his employment, Plaintiff Barr, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

75.     Along with other participating employees, Plaintiff Barr was never provided proper notice of the lapsed healthcare coverage.

76.     Furthermore, Plaintiff Barr, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

77.     As a result of Defendants' unlawful and illegal action, Plaintiff Barr is owed approximately $1,300.00 in misappropriated health insurance premiums.

78.     Plaintiff Barr also participated in the 401k plan.

79.     During his employment, Plaintiff Barr discovered Defendants had been systematically accruing the payroll deductions of his participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

80.     As a result of the unlawful and illegal conduct taken by Defendants toward his 401k plan, Plaintiff Barr is owed approximately $300.00 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Annemarie F. Collins**

81.     Plaintiff Annemarie F. Collins was employed with Defendants since November 2, 2015, and held a position as an Associate Editor.

82.     Since August 2016, Defendants failed to provide Plaintiff Collins with a single bi-weekly check in a timely fashion.

83.     Under the regular terms and conditions of her employment, Defendants have failed to pay Plaintiff Collins approximately $2,354.40 in wages and other forms of payroll compensation.

84.     Plaintiff Collins also participated in the 401k plan.

85.     During her employment, Plaintiff Collins discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

86.     As a result of the unlawful and illegal conduct taken by Defendants toward her 401k plan, Plaintiff Collins is owed approximately $963.21 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Clark Celmayster**

87.     Plaintiff Clark Celmayster was employed with Defendants since January 1992, and held position as National Account Executive.

88.     Since August 2016, Defendants failed to provide Plaintiff Clark Celmayster with a single biweekly check in a timely fashion.

89.     Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Clark Celmayster approximately $15,000 in wages and other forms of payroll compensation.

90. Plaintiff Clark Celmayster also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

91. During his employment, Plaintiff Clark Celmayster, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

92. Along with other participating employees, Plaintiff Clark Celmayster was never provided proper notice of the lapsed healthcare coverage.

93. Furthermore, Plaintiff Clark Celmayster, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

94. As a result of Defendants' unlawful and illegal action, Plaintiff Clark Celmayster is owed approximately $3,500.00 in misappropriated health insurance premiums.

95. During his employment with Defendants, Plaintiff Clark Celmayster also participated in the 401k plan.

96. Plaintiff Clark Celmayster discovered Defendants had been systematically accruing the payroll deductions of his participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

97. As a result of the unlawful and illegal conduct taken by Defendants toward his 401k plan, Plaintiff Clark Celmayster is owed approximately $2,000.00 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Margaret Celmayster**

98. Plaintiff Margaret Celmayster was employed with Defendants since March 1989, and held a position as Associate.

99.     Since August 2016, Defendants failed to provide Plaintiff Margaret Celmayster with a single biweekly check in a timely fashion.

100.    Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Margaret Celmayster approximately $7,000.00 in wages and other forms of payroll compensation.

101.    Plaintiff Margaret Celmayster also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

102.    During her employment, Plaintiff Margaret Celmayster, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

103.    During the time in which her health insurance coverage lapsed, Plaintiff Margaret Celmayster incurred additional medical bills.

104.    Along with other participating employees, Plaintiff Margaret Celmayster was never provided proper notice of the lapsed healthcare coverage.

105.    Furthermore, Plaintiff Margaret Celmayster, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

106.    As a result of Defendants' unlawful and illegal action, Plaintiff Margaret Celmayster is owed damages in misappropriated health insurance premiums plus any incurred medical bills.

107.    During her employment with Defendants, Plaintiff Margaret Celmayster also participated in the 401k plan.

108. Plaintiff Margaret Celmayster discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

109. As a result of the unlawful and illegal conduct taken by Defendants toward her 401k plan, Plaintiff Margaret Celmayster is owed damages in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Candace Davis**

110. Plaintiff Candace Davis was employed with Defendants since August 1, 2005, and held a position as a Sales Associate and Senior Account Executive.

111. Since August 2016, Defendants failed to provide Plaintiff Davis with a single bi-weekly paycheck on time.

112. Under the regular terms and conditions of her employment, Defendants have failed to pay Plaintiff Davis approximately $4,120.61 in wages and other forms of payroll compensation.

113. During her employment with Defendants, Plaintiff Davis also participated in employer-sponsored Short-Term Disability insurance (participation through payroll deduction).

114. After becoming aware of Defendants' pattern of unlawful and illegal action conduct taken towards their employees, Plaintiff Davis contacted the Short-Term Disability insurance carrier regarding Defendants' enrolled policy.

115. Plaintiff Davis was unable to receive confirmation regarding the Short-Term Disability insurance premiums being paid by Defendants.

116. Following this information, Plaintiff Davis attempted to contact Defendants' Human Resources Department but was given no further information regarding the Short-Term Disability insurance premiums being paid by Defendants.

117. As a result of Defendants' unlawful action, Plaintiff Candace Davis is owed approximately $2,534.00 for the Short Term Disability insurance premiums which were deducted from her paychecks but never paid.

**Plaintiff Michelle Deis**

118. Plaintiff Michelle Deis was employed with Defendants since March 2014, and held a position as a Sales Account Representative.

119. Since August 2016, Defendants failed to provide Plaintiff Deis with a single biweekly check on time.

120. Under the regular terms and condition of her employment, Defendants have failed to pay Plaintiff Deis approximately $6,978.01 in wages and other forms of payroll compensation.

121. Plaintiff Deis also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

122. During her employment, Plaintiff Deis, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

123. Along with other participating employees, Plaintiff Deis was never provided proper notice of the lapsed healthcare coverage.

124. Furthermore, Plaintiff Deis, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

125. As a result of Defendants' unlawful and illegal action, Plaintiff Deis is owed approximately $894.84 in misappropriated health insurance premiums.

126. Plaintiff Deis also participated in employer-sponsored Short-Term disability insurance (participation through payroll deduction).

127. After becoming aware of Defendants' unlawful action taken in regard to the employment, Plaintiff Deis contacted the Short-Term disability insurance carrier regarding Defendants' enrolled policy.

128. Plaintiff Deis was informed that the insurance carrier was unable to locate Defendants' policy in their records.

129. Following this information, Plaintiff Deis attempted to contact Defendants' Human resources Department but was given no further information regarding the Short-Term disability insurance premiums being paid by Defendants.

130. As a result of Defendants' unlawful and illegal action, Plaintiff Deis is owed approximately $1,524.96 for the Short-Term Disability insurance premiums which were deducted from her paychecks but never paid.

**Plaintiff Cheryl A. Drotar**

131. Plaintiff Cheryl A. Drotar was employed with Defendants since 1997, and held a position as a Production Manager.

132. Since August 2016, Defendants failed to provide Plaintiff Drotar with a single biweekly check on time.

133. Under the regular terms and conditions of her employment, Defendants have failed to pay Plaintiff. Drotar approximately $4,000.00 in wages and other forms of payroll compensation.

134. During her employment with Defendants, Plaintiff Drotar also participated in the employer-sponsored healthcare (participation through payroll deduction).

135. During her employment, Plaintiff Drotar, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

136. Along with other participating employees, Plaintiff Drotar was never provided proper notice of the lapsed healthcare coverage.

137. Furthermore, Plaintiff Drotar, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place. During this time, Plaintiff Drotar also incurred a $149.00 medical bill as a result of her lapsed health insurance coverage.

138. As a result of Defendants' unlawful and illegal action, Plaintiff Drotar is owed approximately $8,653.44 in misappropriated health insurance premiums and $152.73 in medical bills.

139. Plaintiff Drotar also participated in the 401k plan.

140. While being employed with Defendants, Plaintiff Drotar discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

141. As a result of Defendants unlawful and illegal conduct, Plaintiff Drotar had to take a $10,000 loan against her 401k account.

142. As a result of the unlawful and illegal conduct taken by Defendants, Plaintiff Drotar is owed approximately $318.48 in misappropriated 401k payroll deductions plus losses for any accrued interest and monies relating to her loan.

**Plaintiff Michele Freiberg**

143.     Plaintiff Michele Freiberg was employed with Defendants since April 28, 2016, and held a position as an Account Executive.

144.     Since August 2016, Defendants failed to provide Plaintiff Freiberg with a single biweekly check in a timely fashion.

145.     Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Freiberg approximately $5,964.84 in wages and other forms of payroll compensation.

146.     Plaintiff Freiberg also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

147.     During her employment, Plaintiff Freiberg, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

148.     Along with other participating employees, Plaintiff Freiberg was never provided proper notice of the lapsed healthcare coverage.

149.     Furthermore, Plaintiff Freiberg, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

150.     As a result of Defendants' unlawful action, Plaintiff Freiberg is owed approximately $714.00 in misappropriated health insurance premiums and $119.00 in health savings account deposits.

**Plaintiff Megan Hatfield**

151. Plaintiff Megan Hatfield was employed with Defendants since February 8, 2016, and held a position as Sales Representative.

152. Since August 2016, Defendants failed to provide Plaintiff Hatfield a single biweekly check in a timely fashion.

153. Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Hatfield approximately $2,500.00 in wages and other forms of payroll compensation.

154. Plaintiff Hatfield also participated in the 401k plan.

155. While being employed with Defendants, Plaintiff Hatfield discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

156. As a result of the unlawful conduct taken by Defendants toward her 401k plan, Plaintiff Hatfield is owed approximately $600.00 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Jeanne Hudak**

157. Plaintiff Hudak was employed with Defendants since May 8th, 1995, and held a position as a Production Supervisor.

158. Since August 2016, Defendants failed to provide Plaintiff Hudak with a single biweekly check in a timely fashion.

159. Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Hudak approximately $2,864.02 in wages and other forms of payroll compensation.

160. Plaintiff Hudak also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

161.     During her employment, Plaintiff Hudak, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

162.     Along with other participating employees, Plaintiff Hudak was never provided proper notice of the lapsed healthcare coverage.

163.     Furthermore, Plaintiff Hudak, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

164.     As a result of Defendants' unlawful and illegal action, Plaintiff Hudak is owed approximately $2,385.30 in misappropriated health insurance premiums.

165.     During her employment with Defendants, Plaintiff Hudak also participated in the 401k plan.

166.     While being employed with Defendants, Plaintiff Hudak discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

167.     As a result of the unlawful and illegal conduct taken by Defendants toward her 401k plan, Plaintiff Hudak is owed approximately $394.72 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Michael Jones**

168.     Plaintiff Michael Jones was employed with Defendants since November 26, 2012, and held a position of an Association Editor.

169.     Since August 2016, Defendants failed to provide Plaintiff Jones with a single biweekly check in a timely fashion.

170.    Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Jones approximately $3,732.72 in wages and other forms of payroll compensation.

171.    Plaintiff Jones also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

172.    During his employment, Plaintiff Jones, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

173.    Along with other participating employees, Plaintiff Jones was never provided proper notice of the lapsed healthcare coverage.

174.    Furthermore, Plaintiff Jones, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

175.    As a result of Defendants' unlawful action, Plaintiff Jones is owed approximately $762.72 in misappropriated health insurance premiums.

176.    During his employment, Plaintiff Jones also participated in the 401k plan.

177.    While being employed with Defendants, Plaintiff Jones discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

178.    As a result of the unlawful and illegal conduct taken by Defendants toward his 401k plan, Plaintiff Jones is owed approximately $177.60 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Michael Kerr**

179.     Plaintiff Michael Kerr was employed with Defendants since July 2002, and held a position as a Custom Promotion Sales Manager.

180.     Since August 2016, Defendants failed to provide Plaintiff Kerr with a single biweekly check in a timely fashion.

181.     Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Kerr approximately $9,922.35 in wages and other forms of payroll compensation.

182.     Plaintiff Kerr also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

183.     During his employment, Plaintiff Kerr, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

184.     Along with other participating employees, Plaintiff Kerr was never provided proper notice of the lapsed healthcare coverage.

185.     Furthermore, Plaintiff Kerr, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

186.     As a result of Defendants' unlawful and illegal action, Plaintiff Kerr is owed approximately $4,887.60 in misappropriated health insurance premiums.

187.     During his employment, Plaintiff Jones also participated in the 401k plan.

188.     While being employed with Defendants, Plaintiff Jones discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

189.    As a result of the unlawful and illegal conduct taken by Defendants toward his 401k plan, Plaintiff Kerr is owed approximately $2,477.81 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Emily Krum**

190.    Plaintiff Emily Krum was employed with Defendants since February 8, 2016, and held a position as Production Assistant.

191.    Since August 2016, Defendants failed to provide Plaintiff Krum with a single biweekly check in a timely fashion.

192.    Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Krum approximately $2,039.92 in wages and other forms of payroll compensation.

**Plaintiff Rachel Laird**

193.    Plaintiff Rachel Laird was employed with Defendants since March 2016, and held a position as a Corporate Sales Manager.

194.    Since August 2016, Defendants failed to provide Plaintiff Laird with a single biweekly check in a timely fashion.

195.    Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Laird approximately $8,653.92 in wages and other forms of payroll compensation.

**Plaintiff Danielle Lasorda**

196.    Plaintiff Danielle Lasorda was employed with Defendants since May 2012, and held a position as an Account Executive.

197.    Since August 2016, Defendants failed to provide Plaintiff Lasorda with a single biweekly check in a timely fashion.

198.     Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Lasorda approximately $4,072.00 in wages and other forms of payroll compensation. Plaintiff Lasorda also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

199.     During her employment, Plaintiff Danielle Lasorda, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

200.     Along with other participating employees, Plaintiff Lasorda was never provided proper notice of the lapsed healthcare coverage.

201.     Furthermore, Plaintiff Lasorda, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

202.     As a result of Defendants' unlawful and illegal action, Plaintiff Lasorda is owed approximately $1,200.00 in misappropriated health insurance premiums.

**Plaintiff Stephanie Lauletta**

203.     Plaintiff Stephanie Lauletta was employed with Defendants since May 2015, and held a position of Assistant Buyer.

204.     Since August 2016, Defendants failed to provide Plaintiff Lauletta with a single biweekly check in a timely fashion.

205.     Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Lauletta approximately $2,592.74 in wages and other forms of payroll compensation.

206.     Plaintiff Lauletta also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

207.     During her employment, Plaintiff Lauletta, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

208.     Along with other participating employees, Plaintiff Lauletta was never provided proper notice of the lapsed healthcare coverage.

209.     Furthermore, Plaintiff Lauletta, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

210.     As a result of Defendants' unlawful and illegal action, Plaintiff Lauletta is owed approximately $840.00 in misappropriated health insurance premiums.

211.     During her employment, Plaintiff Lauletta also participated in the 401k plan.

212.     While being employed with Defendants, Plaintiff Lauletta discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

213.     As a result of the unlawful and illegal conduct taken by Defendants toward her 401k plan, Plaintiff Lauletta is owed approximately $87.52 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Noel Lopez**

214.     Plaintiff Noel Lopez was employed with Defendants since April 23, 2007, and held a position of Senior Account Executive.

215.     Since August 2016, Defendants failed to provide Plaintiff Lopez with a single biweekly check in a timely fashion.

216. Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Lopez approximately $8,068.09 in wages and other forms of payroll compensation.

217. During his employment, Plaintiff Lopez also participated in the 401k plan.

218. While being employed with Defendants, Plaintiff Lopez discovered Defendants had been systematically accruing the payroll deductions of his participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

219. As a result of the unlawful and illegal conduct taken by Defendants toward his 401k plan, Plaintiff Lopez is owed approximately $874.63 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Samantha Mansmith**

220. Plaintiff Samantha Mansmith was employed with Defendants from October 21, 2002, and held a position of Customer Service Representative.

221. Since August 2016, Defendants failed to provide Plaintiff Mansmith with a single biweekly check in a timely fashion.

222. Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Mansmith approximately $2,000.00 in wages and other forms of payroll compensation.

223. During her employment, Plaintiff Mansmith also participated in the 401k plan.

224. While being employed with Defendants, Plaintiff Mansmith discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

225.     As a result of the unlawful and illegal conduct taken by Defendants toward her 401k plan, Plaintiff Mansmith is owed approximately $250.00 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Lawrence P. Meiers**

226.     Plaintiff Lawrence P. Meiers was employed with Defendants from October 21, 2002, and held a position of Sales Representative and Media Marketing Account Executive.

227.     Since August 2016, Defendants failed to provide Plaintiff Meiers with a single biweekly check in a timely fashion.

228.     Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Meiers approximately $9,109.4 in wages and other forms of payroll compensation.

229.     Plaintiff Meiers also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

230.     During his employment, Plaintiff. Meiers, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

231.     Along with other participating employees, Plaintiff Meiers was never provided proper notice of the lapsed healthcare coverage.

232.     Furthermore, Plaintiff Meiers, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

233.     As a result of Defendants' unlawful and illegal action, Plaintiff Meiers is owed approximately $1,139.64 in misappropriated health insurance premiums.

**Plaintiff Joshua Millhouse**

234.    Plaintiff Joshua Millhouse was employed with Defendants since July 11, 2016, and held a position as an Account Manager.

235.    Since August 2016, Defendants failed to provide Plaintiff Millhouse with a single biweekly check in a timely fashion.

236.    Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Millhouse approximately $2,824.61 in wages and other forms of payroll compensation.

**Plaintiff Tom Neely**

237.    Plaintiff Tom Neely was employed with Defendants since March 1994, and held a position as a National Account Executive/Associate Publisher. Since August 2016, Defendants failed to provide Plaintiff Neely with a single biweekly check in a timely fashion.

238.    Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Neely approximately $3,000.00 in wages and other forms of payroll compensation.

239.    Plaintiff Neely also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

240.    During his employment, Plaintiff Neely, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

241.    Along with other participating employees, Plaintiff Neely was never provided proper notice of the lapsed healthcare coverage.

242.     Furthermore, Plaintiff Neely, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

243.     As a result of Defendants' unlawful and illegal action, Plaintiff Neely is owed approximately $1,626.00 in misappropriated health insurance premiums.

244.     Plaintiff Tom Neely also participated in the 401k plan.

245.     While being employed with Defendants, Plaintiff Neely discovered Defendants had been systematically accruing the payroll deductions of his participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

246.     As a result of the unlawful conduct taken by Defendants toward his 401k plan, Plaintiff Neely is owed approximately $433.92 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Diana Patton**

247.     Plaintiff Diana Patton was employed with Defendants since March 2015, and held a position of Merchandise Assistant.

248.     Since August 2016, Defendants failed to provide Plaintiff Patton with a single biweekly check in a timely fashion.

249.     Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Patton approximately $2,600.00 in wages and other forms of payroll compensation.

250.     Plaintiff Diana Patton also participated in the 401k plan.

251.     While being employed with Defendants, Plaintiff Patton discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

252.    As a result of the unlawful and illegal conduct taken by Defendants toward her 401k plan, Plaintiff Patton is owed approximately $259.00 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Amalia Petropoulos**

253.    Plaintiff Amalia Petropoulos was employed with Defendants since April 15, 2013, and held a position of Senior Account Executive.

254.    Since August 2016, Defendants failed to provide Plaintiff Petropoulos with a single biweekly check in a timely fashion.

255.    Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Amalia Petropoulos approximately $4,169.39 in wages and $373.88 in other forms expenses.

256.    Plaintiff Petropoulos also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

257.    During her employment, Plaintiff Petropoulos, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

258.    Along with other participating employees, Plaintiff Amalia Petropoulos was never provided proper notice of the lapsed healthcare coverage.

259.    Furthermore, Plaintiff Petropoulos, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

260.    As a result of Defendants' unlawful and illegal action, Plaintiff Amalia Petropoulos is owed approximately $ 727.20 in misappropriated health insurance premiums.

**Plaintiff Ashley Reinhold**

261.    Plaintiff Ashley Reinhold was employed with Defendants since March 30, 2015, and held a position as a Buyer.

262.    Since August 2016, Defendants failed to provide Plaintiff Reinhold with a single biweekly check in a timely fashion.

263.    Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Reinhold approximately $6,566.22 in wages and other forms of payroll compensation.

264.    Plaintiff Reinhold also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

265.    During her employment, Plaintiff Reinhold, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

266.    Along with other participating employees, Plaintiff Reinhold was never provided proper notice of the lapsed healthcare coverage.

267.    Furthermore, Plaintiff Reinhold, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

268.    As a result of Defendants' unlawful and illegal action, Plaintiff Reinhold is owed approximately $1,076.70 in misappropriated health insurance premiums.

269.    During her employment, Plaintiff Reinhold also participated in the 401k plan.

270. While being employed with Defendants, Plaintiff Reinhold discovered Defendants had been systematically accruing the payroll deductions of her participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

271. As a result of the unlawful and illegal conduct taken by Defendants toward her 401k plan, Plaintiff Reinhold is owed approximately $257.52 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Sue Borjeson-Romano.**

272. Plaintiff Sue Borjeson-Romano was employed with Defendants from April 1993 to January 20, 2017, and held a position as Senior Account Executive.

273. Since August 2016, Defendants failed to provide Plaintiff Romano with a single biweekly check in a timely fashion.

274. Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Romano approximately $5,000.00 in wages and other forms of payroll compensation.

**Plaintiff Michael Sabo**

275. Plaintiff Michael Sabo was employed with Defendants from March 14, 2016 to February 6, 2017, and held a position Business Development Account Executive.

276. Since August 2016, Defendants failed to provide Plaintiff Sabo with a single biweekly check in a timely fashion.

277. Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Sabo approximately $6,218.76 in wages and other forms of payroll compensation.

278. Plaintiff Sabo also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

279. During his employment, Plaintiff Sabo, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

280. Along with other participating employees, Plaintiff Sabo was never provided proper notice of the lapsed healthcare coverage.

281. Furthermore, Plaintiff Sabo, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

282. As a result of Defendants' unlawful and illegal action, Plaintiff Sabo is owed approximately $1,312.20 in misappropriated health insurance premiums.

**Plaintiff Andrew Sims**

283. Plaintiff Andrew Sims was employed with Defendants since February 2, 2013, and held a position as the Director of Information technology (IT).

284. Since August 2016, Defendants failed to provide Plaintiff Sims with a single biweekly check in a timely fashion.

285. Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Sims approximately $13,000.00 in wages and other forms of payroll compensation.

286. During his employment, Plaintiff Sims, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

287. Along with other participating employees, Plaintiff Sims was never provided proper notice of the lapsed healthcare coverage.

288.    Furthermore, Plaintiff Sims, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

289.    As a result of Defendants' unlawful action, Plaintiff Sims is owed approximately $1,080.00 in misappropriated health insurance premiums.

290.    During his employment, Plaintiff Sims also participated in the 401k plan.

291.    While being employed with Defendants, Plaintiff Sims discovered Defendants had been systematically accruing the payroll deductions of his participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

292.    As a result of the unlawful conduct taken by Defendants toward his 401k plan, Plaintiff Sims is owed approximately $300.00 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Kristin Stein**

293.    Plaintiff Kristin Stein was employed with Defendants since December 2014, and held a position as a Graphic Designer.

294.    Since August 2016, Defendants failed to provide Plaintiff Stein with a single biweekly check in a timely fashion.

295.    Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Stein approximately $ 1,309.00 in wages and other forms of payroll compensation.

296.    Plaintiff Stein also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

297. During her employment, Plaintiff Stein, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

298. Along with other participating employees, Plaintiff Stein was never provided proper notice of the lapsed healthcare coverage.

299. Furthermore, Plaintiff Stein, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

300. As a result of Defendants' unlawful and illegal action, Plaintiff Stein is owed approximately $640.00 in misappropriated health insurance premiums.

**Plaintiff Nancy Stock**

301. Plaintiff Nancy Stock was employed with Merion Matters since July 11, 2016, and held a position as a Recruitment Advertising Sales Representative.

302. Since August 2016, Defendants failed to provide Plaintiff Nancy Stock with a single biweekly check in a timely fashion.

303. Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Stock approximately $3,000.00 in wages and other forms of payroll compensation.

304. During her employment, Plaintiff Stock, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

305. Along with other participating employees, Plaintiff Stock was never provided proper notice of the lapsed healthcare coverage.

306. Furthermore, Plaintiff Stock, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

307. As a result of Defendants' unlawful and illegal action, Plaintiff Stock is owed approximately $720.00 in misappropriated health insurance premiums.

**Plaintiff Stephanie Weaver**

308. Plaintiff Stephanie Weaver was employed with Defendants since February 13, 2016, and held a position as a Marketing Copywriter.

309. Since August 2016, Defendants failed to provide Plaintiff Weaver with a single biweekly check in a timely fashion.

310. Under the regular terms and conditions of her employment, Defendants failed to pay Plaintiff Weaver approximately $2,200.00 in wages and other forms of payroll compensation.

311. Plaintiff Weaver also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

312. During her employment, Plaintiff Weaver, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

313. Along with other participating employees, Plaintiff Weaver was never provided proper notice of the lapsed healthcare coverage.

314. Furthermore, Plaintiff Weaver, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

315. During this time, Plaintiff Weaver incurred a medical bill of approximately $600.00, which was paid out of her own pocket due to her lapsed coverage.

316.   As a result of Defendants' unlawful and illegal action, Plaintiff Weaver is owed approximately $1,800.00 in misappropriated health insurance premiums and other expenses.

**Plaintiff Randy L. Wehrs**

317.   Plaintiff Randy L. Wehrs was employed with Defendants since January 2008, and held a position of Senior Web Designer/Front End Web Developer.

318.   Since August 2016, Defendants failed to provide Plaintiff Randy L. Wehrs with a single biweekly check in a timely fashion.

319.   Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Wehrs approximately $4,000.00 in wages and other forms of payroll compensation.

320.   Plaintiff Wehrs also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

321.   During his employment, Plaintiff Wehrs, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

322.   Along with other participating employees, Plaintiff Wehrs was never provided proper notice of the lapsed healthcare coverage.

323.   Furthermore, Plaintiff Wehrs, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

324.   During this time, Plaintiff Wehrs incurred a medical bill of approximately $200.00 due to his lapsed coverage.

325.   As a result of Defendants' unlawful and illegal action, Plaintiff Wehrs is owed approximately $840.00 in misappropriated health insurance premiums and other expenses.

**Plaintiff Christopher Wharton**

326. Plaintiff Christopher Wharton was employed with Defendants since December 7, 2015, and held a position as a Customer Service Supervisor.

327. Since August 2016, Defendants failed to provide Plaintiff Wharton with a single biweekly check in a timely fashion.

328. Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Wharton approximately $5,540.00 in wages and other forms of payroll compensation.

329. Plaintiff Wharton also participated in the 401k plan.

330. While being employed with Defendants, Plaintiff Wharton discovered Defendants had been systematically accruing the payroll deductions of his participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan.

331. As a result of the unlawful and illegal conduct taken by Defendants toward his 401k plan, Plaintiff Wharton is owed approximately $ 258.47 in misappropriated 401k payroll deductions plus losses for any accrued interest.

**Plaintiff Howard Whitman**

332. Plaintiff Howard Whitman was employed with Defendants since June 20, 2016, and held a position of Editor.

333. Since August 2016, Defendants failed to provide Plaintiff Whitman with a single biweekly check in a timely fashion.

334. Under the regular terms and conditions of his employment, Defendants failed to pay Plaintiff Whitman approximately $8,000.00 in wages and other forms of payroll compensation.

335.    Plaintiff Whitman also participated in the employer-sponsored healthcare insurance (participation through payroll deduction).

336.    During his employment, Plaintiff Whitman, along with other employees, discovered Defendants failed to pay the health insurance company since March 2016, which caused their healthcare coverage to subsequently lapse on September 1, 2016.

337.    Along with other participating employees, Plaintiff Whitman was never provided proper notice of the lapsed healthcare coverage.

338.    Furthermore, Plaintiff Whitman, along with other participating employees, was never notified by Defendants of their failure to pay the health insurance company despite these continuing health insurance payroll deductions taking place.

339.    As a result of Defendants' unlawful and illegal action, Plaintiff Whitman is owed approximately $2,000.00 in misappropriated health insurance premiums and other expenses.

## FACTS RELATING TO CLOSING OF MERION MATTERS/ADVANCE HEALTHCARE

340.    At all times relevant to the matters set forth herein, Defendants assured Plaintiffs that the Merion Matters/Advance Healthcare Shop business would be continuing on in some kind of operating capacity and at no time indicated that the business would close.

341.    On February 15, 2017, at approximately 6:00 PM, employees of Defendants Merion Matters/Advance Health Care Shop were emailed regarding the status of future paychecks. The employees of Merion Matters/Advance Healthcare were told:

a)   Employees would receive minimum wage at a rate of $7.25/hr;

b)   The next pay date for employees would be Friday, February 24, 2017 and such payment would cover hours worked from January 7, 2017 to February 3, 2017;

c) The following scheduled pay date would be Friday, February 24, 2017 and such payment would cover hours worked from February 4, 2017 to February 17, 2017;

d) Sale representatives would be paid their commissions;

e) Future scheduled pay dates would be continued between March and April 2017.

342.     This email was another example of Defendants' continuing pattern of false and/or materially misleading information to their employees regarding their pay and other benefits.

343.     On February 16, 2017, at approximately 11:00 PM, Defendant Ann E. Kielinksi emailed employees of Defendants Merion Matters/Advance Healthcare Shop that the business would be closing its doors on February 17, 2017.

344.     Defendant Ann E. Kielinski also informed employees that on its closing date employees would be provided information detailing how employees would be receiving benefits, final paychecks and other information to help them through their transition.

345.     On February 17, 2017, employees reported to the office to receive their late paychecks and other information as promised.

346.     Rather than give Plaintiffs and other employees their later pay, Defendant Walter M. Kielinski shouted and verbally berated his employees as being the reasons the company was closing its doors.

347.     Many Plaintiffs who actually received deficient paychecks discovered the paycheck would later bounce.

348.     The actions of Defendants were part of a deliberate and concerted plan to defraud Plaintiffs and other employees. As a result of these actions, Plaintiffs suffered financial and emotional harm.

349.     The actions of all of the Defendants were intentional, deliberate, wanton, willfully reckless, grossly negligent and negligent.

## COUNT ONE – VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938, 29 U.S.C. § 201, *ET SEQ.*

350.     Plaintiffs incorporate herein by reference paragraphs 1 through 349 as if set forth herein at length.

351.     Defendants willfully engaged in a widespread pattern and practice of violating the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*, by failing and refusing to pay all employees as required under federal law and by retaining employee payroll deductions.

352.     As a result of Defendants' unlawful actions, they are liable to Plaintiffs for actual damages, liquidated damages and equitable relief, pursuant to 29 U.S.C. §216(b), as well as reasonable attorneys' fees, costs and expenses.

WHEREFORE, Plaintiffs request that this Court:

(a)     Award unpaid/late wages and penalties to the fullest extent permitted by law;

(b)     Award prejudgment interest to the fullest extent permitted by law;

(c)     Award litigation costs, expenses and attorneys' fees; and

(d)     Grant such other relief as this Court deems just and proper.

## COUNT TWO – VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

353.     Plaintiffs incorporate the above paragraphs as if same were set forth in full herein.

354.     This action challenges Defendants' common business practice of failing to pay their employees and defraud their employees out of other benefits that are due to Plaintiffs under their employment contract as provided under the Pennsylvania Wage Payment and Collection Law. 43. Pa. Cons. Stat. § 2601, *et seq*.

355. Specifically, Defendants engaged in widespread pattern and practice in violating the WPCL by failing to pay Plaintiffs in full and on regular designated pay days under the terms and conditions of their employment. Defendants also retained Plaintiffs paychecks disbursements for their own behalf.

356. As a result of Defendants' unlawful acts, they are liable to Plaintiffs for actual damages, liquidated damages and reasonable attorneys' fees, costs and expenses.

WHEREFORE, Plaintiffs request that this Court:

(a) Award unpaid/late wages and penalties to the fullest extent permitted by law;

(b) Award prejudgment interest to the fullest extent permitted by law;

(c) Award litigation costs, expenses and attorneys' fees; and

(d) Grant such other relief as this Court deems just and proper.

## COUNT THREE – VIOLATION OF THE WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT

357. Plaintiffs incorporate the above paragraphs as if same were set forth in full herein.

358. Upon information and belief, Defendants are covered employers under the Worker Adjustment and Retraining Notification Act, 29 U.S.C.A. § 2101, *et seq.*

359. On February 16, 2017, Defendants sent notification to Plaintiffs that the Merion Matters/Advance Healthcare Shop business would be closing.

360. This notification occurred less than twenty four hours after Defendants had previously assured Plaintiffs that business would be continuing.

361. Plaintiffs were never provided adequate notice of the closing of Defendants' business.

362. As a result of Defendants' unlawful acts, they are liable to Plaintiffs for actual damages and reasonable attorneys' fees, costs and expenses.

43

WHEREFORE, Plaintiffs request that this Court:

(a)    Enter judgment against the Defendants for damages;

(b)    Award costs and interest to Plaintiffs;

(c)    Grant such other and further relief as the Court deems appropriate in this matter.

## COUNT FOUR - BREACH OF CONTRACT

363.    Plaintiffs incorporate the above paragraphs as if same were set forth in full herein.

364.    Defendants entered into a contract with Plaintiffs which identified the terms and conditions of Plaintiffs' employment.

365.    Defendants breached Plaintiffs' employment contract by acting intentionally, recklessly, in a grossly negligent and/or negligently when they, *inter alia*:

(a)    Failed to pay Plaintiffs in accordance with the terms and conditions of their employment;

(b)    Failed to provide a timely paycheck to Plaintiffs since August 2016;

(c)    Failed to provide sufficient notice to Plaintiffs that Defendants were closing their business;

(d)    Failed to disclose to Plaintiffs that Defendants were not making payment to the company health insurance carrier despite the continuing paycheck deductions taking place;

(e)    Failed to properly disclose to Plaintiffs that their health insurance had lapsed;

(f)    Failed to disclose to Plaintiffs that Defendants were systematically accruing the payroll deductions of employee participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan;

(g)  Failed to disclose to Plaintiffs that Defendants were not paying the Short-Term Disability insurance premiums to the carrier.

366.  The aforesaid actions/inactions of Defendants constitutes a breach of their duty owed to Plaintiffs to act with good faith under the terms and conditions of their employment.

WHEREFORE, Plaintiffs request that this Court:

(a) Enter judgment against the Defendants for damages;

(b) Award costs and interest to Plaintiffs;

(c) Grant such other and further relief as the Court deems appropriate in this matter.

## COUNT FIVE – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

367.  Plaintiffs incorporate the above paragraphs as if same were set forth in full herein.

368.  In every contract there exists an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.

369.  The implied covenant of good faith and fair dealing imposes an obligation on Defendants to act fairly, honestly and in good faith in the performance of the terms and conditions of its contractual relationship with Plaintiffs.

370.  Plaintiffs had a reasonable expectation that the terms and conditions of their employment contracts would be carried out accordingly.

371.  Defendants breached its implied covenant of good faith and fair dealing to Plaintiffs by:

(a)  Failing to pay Plaintiffs in accordance with the terms and conditions of their employment;

(b)  Failing to provide a timely paycheck to Plaintiffs since August 2016;

(c)    Engaging in repeated lies and misrepresentation regarding the status of employee paychecks;

(d)    Failing to provide sufficient notice to Plaintiffs that Defendants were closing their business;

(e)    Failing to disclose to Plaintiffs that Defendants were not making payment to the employee health insurance carrier despite the continuing paycheck deductions taking place;

(f)    Failing to properly disclose to Plaintiffs that their health insurance had lapsed;

(g)    Failing to disclose to Plaintiffs that Defendants were systematically accruing the payroll deductions of employee participation in the 401k account but had failed to turn these monies over to the investment firm managing the plan;

(h)    Failing to disclose to Plaintiffs that Defendants were not paying the Short-Term Disability insurance premiums to the carrier.

372.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demands judgment in its favor and against Defendants for compensatory damages determined to have been suffered by Plaintiffs together with interest thereon and costs of suit, and such other and further relief as the Court deems appropriate under the circumstances.

## COUNT SIX - NEGLIGENT MISREPRESENTATION/FRAUD

373.    Plaintiffs incorporate the above paragraphs as if same were set forth in full herein.

374.    The acts and omissions of Defendants with regard to Plaintiffs' wages and payroll deductions constitute negligent misrepresentation and/or constructive fraud.

375. Defendants knowingly continued to provide false and/or materially misleading information to Plaintiffs with regard to various aspects of their employment, including but not limited to the following;

(a) Status of paychecks;

(b) 401k;

(c) Health insurance;

(d) Disability insurance;

(e) And other employee payroll deductions.

376. Plaintiffs relied upon Defendants falsehoods and materially misleading information regarding the terms and conditions of their employment.

377. The aforesaid action/inactions of Defendants caused Plaintiffs to suffer financial and emotional injury, including but not limited to the loss of an amount within the employment contracts of Plaintiffs.

WHEREFORE, Defendants requests that this Court:

(a) Enter a judgement against Defendants for damages;

(b) Award costs and interest to Plaintiffs;

(c) Award punitive damages against Defendants; and

(d) Grant such other and further relief as the Court deems appropriate in this matter.

## COUNT SEVEN – UNJUST ENRICHMENT

378. Plaintiffs incorporate the above paragraphs as if same were set forth in full herein.

379. Defendants knowingly and intentionally received and retained the payroll deductions of their employees.

380.	Specifically, Plaintiffs were never notified of Defendants' failure to pay the health insurance company despite Plaintiffs' continuing health insurance payroll deductions taking place.

381.	Plaintiffs were never notified of Defendants' failure to pay Plaintiffs' 401k payroll deductions to the investment firm managing the plan despite the ongoing 401k payroll deductions taking place.

382.	Plaintiffs were never notified of Defendants' failure to pay the disability insurance premiums to the insurance carrier despite such deductions continuing to take place.

383.	Defendants' acceptance and retention of such benefits is inequitable and unjust.

WHEREFORE, Plaintiffs demands judgment in its favor and against Defendants for compensatory damages determined to have been suffered by Plaintiffs together with interest thereon and costs of suit, punitive damages and such other and further relief as the Court deems appropriate under the circumstances.

## COUNT EIGHT – CIVIL CONSPIRACY

384.	Plaintiffs incorporate the above paragraphs as if same were set forth in full herein.

385.	Defendants and John Does 1 through 20 acted with a common purpose to engage in illegal and unlawful acts with regard to the common employment practices of Merion Matters/Advance Healthcare employees.

386.	During the course of their employment, Plaintiffs believed they were receiving the benefit of certain deductions in their employment.

387.	Unbeknownst to Plaintiffs, Defendants agreed to commit the overt act of unlawfully retaining various payroll deductions for their own benefit.

388.	Defendants' acted in pursuance of their common purpose to defraud Plaintiffs.

389. As a direct result of the acts of civil conspiracy, Plaintiffs have been directly and indirectly damaged and substantiated substantial loss.

WHEREFORE, Plaintiffs request that this Court:

(a) Enter judgment against the Defendants for compensatory consequential damages;

(b) Award counsel fees, costs and interest to plaintiffs;

(c) Level punitive damages against Defendants; and

(d) Grant such other and further relief as appropriate in this matter.

## COUNT NINE – CONVERSION

390. Plaintiffs incorporate the above paragraphs as if same were set forth in full herein.

391. Defendants knowingly received and retained the wages and payroll deductions of Plaintiffs and other employees.

392. Defendants knowingly misappropriated the wages and payroll deductions of Plaintiffs without their knowledge or consent.

393. As a result, Defendants intentionally deprived or interfered with Plaintiffs receiving the benefits of their wages and payroll deductions.

394. As a direct result, Plaintiffs have been directly and indirectly damaged and suffered substantial loss.

WHEREFORE, Plaintiffs request that this Court:

(a) Enter judgment against the Defendants for compensatory consequential damages;

(b) Award counsel fees, costs and interest to Plaintiffs;

(c) Level punitive damages against Defendants; and

(d) Grant such other and further relief as appropriate in this matter.

## COUNT TEN - PIERCE THE CORPORATE VEIL

395. Plaintiffs incorporate the above paragraphs as if same were set forth in full herein.

396. Upon information and belief, Defendant Defendants Ann E. Kielinksi and Walter M. Kielinski are the owners of the Merion Matters/Advance Healthcare Shop business and control the Merion Matters/Advance Healthcare Defendants.

397. At all times relevant to the matters set forth herein, the Merion Matters/Advance Healthcare Defendants were mere instrumentalities of Defendants Ann E. Kielinksi and Walter M. Kielinski.

398. As a result of the foregoing, Defendants Ann E. Kielinksi and Walter M. Kielinski are jointly and severally liable for the debts of the Merion Matters/Advance Healthcare Defendants.

WHEREFORE, Plaintiffs request that this Court:

(a) Enter a judgment against Defendants;

(b) Award counsel fees, costs and interest to Plaintiffs;

(c) Level punitive damages against Defendants; and

(d) Grant such other and further relief as appropriate in this matter.

Submitted by:

WEIR & PARTNERS LLP

By: _____

Georgios Harmakis, Esquire
*Attorneys for Plaintiffs*

Date: 2/22/17